**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **LAZARO SANCHEZ, both individually and on behalf of a class of others similarly situated;** | **Civil Action No. 15-3391 (MCA)** |
| **Plaintiff,** | **OPINION** |
| **v.** | |
| **COUNTY OF ESSEX,** | |
| **Defendant.** | |

**ARLEO, United States District Judge:**

I.    **INTRODUCTION**

This matter has been opened to the Court by Defendant County of Essex's ("the County") motion to dismiss Plaintiff's Amended Complaint.  (ECF No. 21.)  Plaintiff's Amended Complaint is brought as a putative class action contending that the County's blanket strip search policy violates 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA").  (ECF No. 15.)  The County argues in its motion to dismiss that the Plaintiff's claims are precluded by the Supreme Court's recent decision in *Florence v. Board of Chosen Freeholders of County of Burlington*, —— U.S. ——, 132 S.Ct. 1510 (2012), which held that a jail's policy of conducting visual body cavity strip searches of detainees who were committed to its general population upon entry was reasonable.  For the reasons explained in this Opinion, the Court will deny the motion to dismiss without prejudice at this time.

1

## II.   <u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

The Court addresses only the facts necessary to resolve the instant motion to dismiss. Plaintiff Lazaro Sanchez, a resident of Essex County, New Jersey, was arrested on family law charges of willful nonsupport on or around September 28, 2013. (ECF No. 15, Am. Compl. at ¶ 30.) The Complaint alleges that "[t]he circumstances of Mr. Lazaro's arrest were void of any reasonable suspicion to believe that he was secreting a weapon or contraband in a private area." (*Id.* at ¶ 31.) Upon his arrival at Essex County Correctional Facility ("ECCF"), ECCF employees performed a visual body cavity search on Plaintiff. (*Id.* at ¶ 32.)

> Specifically, an officer instructed Plaintiff to remove all of his clothes, and then to lift up his testicles, squat, and cough. The strip search of Mr. Lazaro occurred within the view of other detainees, who were searched in a similar manner. Mr. Lazaro had not seen a judicial officer prior to being admitted to the Essex County Jail, nor did he see a judicial officer prior to being strip searched.

(*Id.*) Plaintiff was brought before a judge two days later on September 30, 201[3], at which point he was ordered released.[1] (*Id.* at ¶ 33.) He was not actually released from ECCF until October 1, 201[3]. (*Id.*)

The Amended Complaint also alleges the following facts with respect to the strip search policy in effect at ECCF:

> Essex County has instituted a written and/or de facto policy, custom or practice of conducting blanket, group strip searches of all detainees who enter the custody of the Essex County Correctional Facility, and in the absence of privacy partitions. These searches are conducted regardless of the condition of the individual or reasonable suspicion of whether the individual is harboring contraband.

---

[1] Plaintiff's Complaint states that he was brought before a judge on September 30, 2015, and was not released until October 1, 2015, which would be two years after he was arrested. The Court assumes that these two dates are typos.

2

(¶ 24.)  The Amended Complaint also alleges that these "these strip searches are done prior to a detainee being arraigned before a judicial officer to contest the circumstances of their detention, or being provided with a reasonable opportunity to post bail following arraignment." (*Id.*)  The Amended Complaint further alleges that

> Essex County has sufficient housing and/or booking capacity to hold pre-arraignment detainees separate from the Essex County Jail's general population prior to their arraignment.  In the alternative, the Defendant can, with limited effort and expense, modify the physical plant at the Essex County Jail to provide sufficient space to hold pre-arraignment detainees separate from the Jail's general population pending their arraignment.

(*Id.* at ¶ 25.)

Plaintiff, who is represented by counsel, filed his initial Complaint against the County of Essex on May 15, 2015.  (ECF No. 1.)  The County filed its first motion to dismiss on July 23, 2015.  (ECF No. 7.)  On October 15, 2015, the Magistrate Judge entered an Order granting Plaintiff leave to file an Amended Complaint, which Plaintiff filed the same day.[2]  (ECF Nos. 14-15.)  On January 13, 2016, the County filed a motion to dismiss the Amended Complaint. (ECF No. 21.)  On March 7, 2016, Plaintiff filed his opposition brief, and on April 15, 2016, the County filed its reply brief.  (ECF Nos. 24, 29.)  The matter is now fully briefed and ready for disposition.

## III.  **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  On a motion to dismiss for failure to state a claim, the moving party "bears the burden of showing that no claim has been presented."  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing

---

[2] The original motion to dismiss was terminated on November 9, 2015.  (ECF No. 17.)

*Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)); *United Van Lines, LLC v. Lohr Printing, Inc.*, No. CIV. 11–4761, 2012 WL 1072248, at *2 (D.N.J. Mar. 29, 2012). In considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir.2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Furthermore, a district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n. 8 (2007) (quoting *Scheuer v. Rhoades*, 416 U.S. 232, 236 (1974)).

## IV.   **ANALYSIS**

The County contends that the allegations in Plaintiff's Complaint do not state a claim for relief under § 1983 or the NJCRA following the Supreme Court's decision in *Florence v. Board of Chosen Freeholders of County of Burlington*, —— U.S. ——, 132 S.Ct. 1510 (2012). (ECF No. 21-1.) Plaintiff contends that his claims fall within the exceptions recognized by the Court in *Florence*, and as such, are not foreclosed by that decision.[3]

The Petitioner in *Florence* was arrested on an outstanding bench warrant after a traffic stop. He was subjected to a strip search upon admission to the Burlington County jail where he was required to lift his genitals, turn around, and cough while squatting. Petitioner shared a cell with at least one other person and interacted with other inmates following his admission to the

---

[3] As noted above, Plaintiff's Complaint is brought as a putative class action; however, the issue of class certification has not yet been addressed, and the Court need not address this issue to dispose of the instant motion to dismiss.

4

jail. 132 S. Ct. at 1514. Six days later he was taken to ECCF and was stripped searched upon

his admission to the facility, and released one day later. *Id.* at 1514. Following these incidents,

petitioner sued the governmental entities that operated the jail under 42 U.S.C. § 1983,

maintaining that "people arrested for minor offenses could not be required to remove their

clothing and expose the most private areas of their bodies to close visual inspection as a routine

part of the intake process" *Id.* Rather, he contended, officials could conduct this kind of search

only if they had reason to suspect a particular inmate of concealing a weapon, drugs, or other

contraband."[4] 132 S. Ct. at 1514–15.

   The Supreme Court disagreed, holding that a jail's policy of conducting visual body

cavity strip searches of detainees who were committed to its general population upon entry was

reasonable. 132 S.Ct. at 1523. Justice Kennedy, writing for the majority, explained that

"[c]orrectional officials have a significant interest in conducting a thorough search as a standard

part of the intake process." *Florence*, 132 S.Ct. at 1518. He further warned that the "difficulties

of operating a detention center must not be underestimated by the courts," and reasoned that

visual strip searches can screen detainees for lice, contagious infection, wounds that require

medical attention, gang tattoos, and contraband. *Id.* at 1515–19. Moreover, he stressed the

potential administrative difficulties that might arise if detainees had to be searched under

different standards according to their current or previous offenses. *Id.* at 1521–22. The Court,

however, appeared to limit its holding and did not consider what would be reasonable under

certain circumstances not before it, such as searches involving touching or intentional

---

[4] The District Court certified a class of individuals who were charged with a nonindictable
offense under New Jersey law, processed at either the Burlington County or Essex County jail,
and directed to strip naked even though an officer had not articulated any reasonable suspicion
they were concealing contraband. *Id.*

humiliation or where an arrestee whose detention had not been reviewed by a magistrate could be held apart from the general population. *Id.* at 1522–23. *See also Crump v. Passaic Cty.*, 147 F. Supp. 3d 249, 255–56 (D.N.J. 2015) (explaining same).

The Third Circuit has had the opportunity to apply the reasoning of *Florence* in two recent published cases. In *J.B. ex rel. Benjamin v. Fassnacht*, 801 F.3d 336, 347 (3d Cir. 2015), *cert. denied*, 136 S. Ct. 1462 (2016), the Third Circuit held that *Florence* guided its decision to uphold a blanket policy to strip search all juvenile detainees admitted to general population at a juvenile detention center.  (finding that the juvenile status of the offenders did not change the analysis or fall within the exceptions outlined in the *Florence*.)  The Court in *Fassnacht* also recognized, however, that the majority opinion and concurrences in *Florence* "left open the possibility of exceptions to [its] holding[:]"

> For example, the majority acknowledged that this case did not require it to rule on the types of searches that would be reasonable where a detainee would be held without assignment to the general jail population and without substantial contact with other detainees. [*Florence*, 132 S.Ct. at 1522.]  In such a situation, "[t]he accommodations ... may diminish the need to conduct some aspects of the searches at issue." [*Id.* at 1523.] Similarly, Chief Justice Roberts wrote separately in a concurrence to emphasize that "the Court does not foreclose the possibility of an exception to the rule it announces."  [*Id.*, Roberts, C.J., concurring.]  Because "factual nuances [did not] play a significant role" in *Florence*, Chief Justice Roberts admonished that "[t]he Court is nonetheless wise to leave open the possibility of exceptions, to ensure that we 'not embarrass the future.'" [*Id.* (quoting *Nw. Airlines, Inc. v. Minnesota*, 322 U.S. 292, 300 (1944)).]  In another concurrence, Justice Alito echoed Chief Justice Roberts's sentiments, stating "[i]t is important to note, however, that the Court does not hold that it is always reasonable to conduct a full strip search of an arrestee whose detention has not been reviewed by a judicial officer and who could be held in available facilities apart from the general population." [*Id.* at 1524 (Alito, J., concurring).]

*Fassnacht*, 801 F.3d at 341.

Most recently, in *Parkell v. Danberg*, __ F.3d __, No. 14-1667, 2016 WL 4375620, at *4-7 (3d Cir. Aug. 17, 2016), the Third Circuit dealt with the application of visual cavity strip search policies to convicted prisoners held in disciplinary segregation. There, the Third Circuit confirmed that the Fourth Amendment applies to such strip searches, and held that issues of fact precluded summary judgment as to the reasonableness of a prison search policy requiring thrice-daily visual body cavity searches of convicted inmates being held in isolation for disciplinary violations. The Court cited to *Florence* in reiterating the broad reach of permissible strip search policies:

> Routine, suspicionless inmate search policies may sweep quite broadly and still be reasonable. In *Florence II*, the Supreme Court declined to require jails to adopt a policy of exempting new detainees "who ha[d] not been arrested for a serious crime or for any offense involving a weapon or drugs" from the blanket strip searches conducted before detainees were committed to the general population. *Florence II*, 132 S.Ct. at 1520. The Court held that it was reasonable for jails to conclude that such an exemption was "unworkable" because "the seriousness of an offense is a poor predictor of who has contraband" and "it would be difficult in practice to determine whether individual detainees fall within the proposed exemption." *Id.* The Court in *Florence II* recognized that narrowly targeted search policies are generally not required in prisons and jails because they tend to be incompatible with the setting. They are often difficult, if not impossible, to implement without an unacceptable risk of false negatives (instances in which dangerous contraband is missed because an inmate is incorrectly classified as low-risk and subjected to less thorough searches). Thus, it is usually reasonable for prisons to favor more broadly drawn search policies.

*Parkell v. Danberg*, 2016 WL 4375620, at *8.

With respect to detainees held in the general population of a jail, *Florence* and its progeny preclude any claim that blanket strip searches are unconstitutional <u>merely</u> due to lack of individualized suspicion. *See, e.g., Williams v. City of Cleveland*, 771 F.3d 945, 951 (6th Cir. 2014) (explaining same.) Nor can detainees who are arrested for less serious crimes claim to be

exempt from the blanket strip searches conducted before they are committed to the general population. The Court in *Florence* concluded such an exemption is "unworkable" because "the seriousness of an offense is a poor predictor of who has contraband" and "it would be difficult in practice to determine whether individual detainees fall within the proposed exemption." *Parkell*, 2016 WL 4375620, at *8 (quoting *Florence*, 132 S.Ct. at 1520).

Here, Plaintiff's Amended Complaint asserts that "[t]he circumstances of Plaintiff's arrest was void of any reasonable suspicion to believe that he was secreting a weapon or contraband in a private area." (Am. Compl. at ¶ 31.) As noted above, *Florence* appears to preclude claims that blanket strip searches are unconstitutional merely due to lack of individualized suspicion. Plaintiff was also arrested on "family law charges of willful non-support" (id. at ¶ 30), which is not a serious crime or a crime involving guns or drugs. But, in the wake of *Florence*, this fact, standing alone, likewise does not exempt Plaintiff from blanket strip search policies.

However, Plaintiff's Amended Complaint does not rely on these facts alone. Plaintiff's claim that his strip search violated his Fourth Amendment rights is premised in part on his allegations that he was not arraigned prior to the strip search and that he could have been housed separately from the general population. The Amended Complaint alleges that Plaintiff, who was arrested on September 28, 2013, was not brought before a judge until September 30, 2013. (*Id.* at ¶¶ 30, 33.) It is not clear from the Amended Complaint whether Plaintiff was housed in the general population before and/or after his arraignment. The Complaint also alleges that ECCF either (1) has sufficient housing to hold pre-arraignment detainees separate from the general population or (2) could easily modify its physical plant to segregate detainees who are awaiting arraignment. (*Id.* at ¶ 25.)

8

The majority in *Florence* acknowledged that it need not rule on the types of searches that would be reasonable where a detainee would be held without assignment to the general jail population and without substantial contact with other detainees. *See Florence*, 132 S.Ct. at 1522. Justice Alito's concurrence further emphasized that "the Court does not hold that it is always reasonable to conduct a full strip search of an arrestee whose detention has not been reviewed by a judicial officer and who <u>could</u> be held in available facilities apart from the general population." *Id.* at 1524 (Alito, J., concurring)(emphasis added).

It is well established that the touchstone of whether a given search or seizure is reasonable is whether the jail's "need for the particular search" outweighs "the invasion of personal rights that the search entails." *Bell*, 441 U.S. at 559. Thus, if a prison possesses no readily available alternative other than to engage in the particular conduct at issue, its conduct likely is reasonably related to its legitimate penological interests. *Turner* v. *Safley*, 482 U.S. 78, 90 (1987). But where a particular search or seizure involves significant intrusion into a detainee's privacy interests, the existence of "obvious, easy alternatives ... that fully accommodate[ ] the prisoner's rights at *de minimis* cost to valid penological interests" suggests that the institution's need to proceed in its chosen manner does not outweigh the burdens it imposes upon the detainee and is therefore unreasonable. *Id.* at 90–91.

Here, Plaintiff's alleges that (1) his detention was not reviewed by a judicial officer prior to the strip search and (2) that ECCF could have easily segregated detainees that were awaiting arraignment. Assuming the truth of these allegations, it appears to the Court that Plaintiff's Fourth Amendment claims premised on these facts are not foreclosed by *Florence*. The Court also declines to find, at this early stage, that his claims based on these facts fail as a matter of law.

Moreover, Plaintiff also alleges he was subjected to a visual body cavity strip search in the presence of other detainees. (Am. Compl. at ¶ 32.) The County suggests in its moving papers that the manner in which it conducts strip searches was essentially approved in *Florence*. Notably, however, in *Florence*, the plaintiff alleged that the jail's decision to strip search him was unreasonable <u>not because it was conducted in an unreasonable manner</u> but because it lacked sufficient justification; namely, that it was conducted absent individualized suspicion that he was concealing contraband. *See Bell*, 441 U.S. at 559, 99 S.Ct. 1861 (noting that "the manner in which [the search] is conducted" and "the justification for initiating it" are two different aspects of whether a particular search is reasonable).

As recently explained by the Sixth Circuit in *Williams v. City of Cleveland*, 771 F.3d 945, 951 (6th Cir. 2014), "nothing in *Florence* upends the long-standing rule that a search of a detainee, even if it does not need to be based upon individualized suspicion, still "must be conducted in a reasonable manner." *Id.* (citing *Bell*, 441 U.S. at 560); *see also United States v. Fowlkes*, 770 F.3d 748, 758, 2014 WL 4178298, at *6 (9th Cir. Aug.25, 2014) (observing that an otherwise justified strip search must be performed in a reasonable manner); *Evans v. Stephens*, 407 F.3d 1272, 1281 (11th Cir.2005) (en banc) ("While searches need not be delicately conducted in the least intrusive manner, they must be conducted in a reasonable manner.").

As further explained in *Williams*,

> *Florence* took pains to emphasize that its holding applied only to the blanket policy before it, which required a visual strip search and a compulsory shower with self-applied delousing solution. 132 S.Ct. at 1523. *Florence* specifically declined to decide whether any other particular mode of carrying out a blanket search policy would violate the Constitution. *Id.* The court observed, for example, that if an officer "engag [ed] in intentional humiliation [or] other abusive practices," the search of a particular detainee could be unreasonable, even if conducted pursuant to a uniformly applicable policy. *Id.*

10

*Williams*, 771 F.3d at 951.  Significantly, as the Sixth Circuit reasoned, the "wider an audience for a strip search, the more humiliating it becomes, especially when the stripped individual is exposed to bystanders who do not share the searching officers' institutional need to view [the detainee] unclothed." *Williams*, 771 F.3d at 953.  Here, Plaintiff's claims here are less egregious than those in *Williams*, which involved allegations of a strip search in the presence of other detainees <u>and</u> alleged physical contact by those performing the search.  The Sixth Circuit's reasoning as to non-private strip searches is nevertheless persuasive.  *See also Crump*, 147 F. Supp. 3d at 56–57 (relying on *Williams*, and finding, on a motion to amend, that claim alleging Fourth Amendment violation based on strip searches conducted in full view of other detainees was not futile as a matter of law).  Following that persuasive authority and authority in this District, the Court finds that Plaintiff's Fourth Amendment claims based on strip searches conducted in the view of other detainees who were searched in a similar manner is not foreclosed by *Florence* and does not fail to state a claim for relief as a matter of law.

Finally, the County also argues that Plaintiff's supplemental state law claims for relief under the NJCRA should be dismissed because the NJCRA is modeled after § 1983, and is "subsumed" by the federal analysis.  (ECF No. 21-1, Mov. Br. at 16.)   Because the Court has denied the motion to dismiss the federal claims, it need not address this argument, and the motion to dismiss the state law claims is also denied without prejudice at this time.

## V.    <u>CONCLUSION</u>

For the reasons stated in the foregoing Opinion, the County's motion to dismiss Plaintiff's Complaint is denied without prejudice.  An appropriate Order follows.

Madeline Cox Arleo, U.S.D.J.

Date: Aug 31, 2016